**Eugene A. GLICK, M.D. and Eugene A. Glick, M.D., P.C.**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES.**

**Civ. A. No. 88–0844–Z.**

United States District Court,
D. Massachusetts.

June 5, 1989.

---

William I. Cowin, Friedman & Atherton, Boston, Mass., for plaintiffs.

Christine M. Roaach, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, Eugene A. Glick, M.D. together with his professional corporation, Eugene A. Glick, M.D., P.C., (hereinafter collectively "Glick") is a participating physician, specializing in psychiatry, under Title XVIII of the United States Social Security Act otherwise known as the Medicare program ("Medicare"). Glick seeks review of the decision of Blue Shield of Massachusetts, Inc. ("Blue Shield") that he received a $42,-313.19 overpayment of Medicare funds for services allegedly provided by plaintiff from 1980 through 1985. Blue Shield was at all material times the fiscal intermediary designated by the Secretary of the Department of Health and Human Services ("Secretary") to administer that portion of the

Medicare program under which Glick provided the services at issue. Because the Secretary is ultimately responsible for determining the amounts to be paid to participating physicians he was substituted as the party defendant. As a result, this action, which had been commenced in state court, was removed to this Court. It is now before me on cross motions for summary judgment.

The essential facts are not in dispute. On November 4, 1986, plaintiff was notified by Blue Shield that he had received overpayment of Medicare funds totaling $42,-947.35 [1] in connection with claims he had submitted for services rendered between 1980 and 1985. This assessment was made on the basis of two samplings, one of claims submitted in 1980 and the other of claims submitted in 1984. Using an extrapolation procedure, which plaintiff does not herein contest, Blue Shield arrived at an overpayment of $40,997.97 for the period 1980–1984 and $1,949.38 for the period 1984–1985. Accordingly, Blue Shield demanded repayment of a total of $42,947.35. The ground for each determination of overpayment on the individual claims reviewed in the samplings was plaintiff's alleged lack of adequate documentation for services provided.

Pursuant to federal requirements, plaintiff was given a "fair hearing" at which he asserted: "(a) that his documentation had not been inadequate, particularly in light of the absence of regulations prescribing what such documentation should be; (b) that Blue Shield was not entitled to treat inadequacy of documentation (if indeed documentation had been inadequate) as the equivalent of failure to provide service altogether; and (c) that Blue Shield had ignored other evidence that the challenged services had in fact been performed." (Stipulations para. 10)

However, the hearing officer upheld the majority of Blue Shield's overpayment calculation.[2] In doing so, she also found that

---

1. The original overpayment calculated by Blue Shield was $56,617.55. Blue Shield's subsequent concession of an extrapolation error reduced the amount in question to $42,947.35.

2. The hearing officer upheld the entire $40,-

the review of plaintiff's claims had been properly conducted under the appropriate documentation standards. These standards identified in her decision were (1) standards from the Health Care Finance Administration ("HCFA") report of the requirements for Medicare and (2) minimum record content criteria recommended by the 1978 peer review committee.

The parties have stipulated that the requirements governing documentation of psychiatric services rendered by Medicare practitioners are contained in portions of the United States Code, Title 42, HCFA regulations, as well as the parties' contract and the Medicare Claims Manual. Plaintiff argues that none of these documentation requirements communicate to him that certain records were necessary for Medicare reimbursement, i.e., they neither impose any particular record keeping content or format nor justify withholding or recovery of Medicare reimbursement in the case of a physician's violation of some required documentation procedure.

Defendant relies on the recent First Circuit opinion, *Doyle v. Secretary of Health and Human Services*, 848 F.2d 296 (1st Cir.1988), which also involved a constitutional attack on a section of the Medicare statute, to support its argument that the documentation requirements at issue in this case are not unconstitutionally vague. In *Doyle*, the court found that failure to better define the statutory phrase "assure services ... of a quality which meets professionally recognized standards of health care," 42 U.S.C. § 1320c–5(a)(2) (1982), did not violate the fundamentals of due process. It cited *Varandani v. Bowen*, 824 F.2d 307 (4th Cir.1987), for the proposition that the "definition of adequate medical care cannot be boiled down to a precise mathematical formula; it must be grounded in what, from time to time, other health professionals consider to be acceptable standards of medical care." *Varandani*, 824 F.2d at 312. This is not true of documentation requirements. Record keeping

standards do not evade definition and are easily codified. Indeed, such requirements have been clearly delineated in appropriate detail by the Commonwealth of Massachusetts in connection with Medicaid claims. *See* 106 CMR 433.409, 433.425(D) (1988).

The provisions used in this case are simply not "as clear as can be expected." *Varandani*, 824 F.2d at 311. Those that are clear do not apply to the plaintiff. Defendant has referenced record keeping provisions that are directed to hospitals, recipients of the Medicare services and carriers such as Blue Shield, not to participating psychiatric practitioners.

Defendant also argues that plaintiff received proper notice of the non-statutory documentation requirements referred to in the Stipulations, specifically those contained in the Medicare Carriers Manual, from his participation in a 1978 peer review committee which employed these standards. However, to the extent that the regulations contained in the Carriers Manual have not been officially promulgated, plaintiff cannot be held accountable to them. Moreover, these provisions are designed to put carriers, not practitioners, on notice.

In addition to plaintiff's participation in the 1978 peer review, defendant identifies two instances where plaintiff received notice of these non-statutory requirements. The first was a 1981 meeting between plaintiff and a medical review team and the second a 1984 meeting with a Health and Human Services investigator. Plaintiff properly points out that both of these encounters took place after the period to which the majority of the alleged overpayments are attributed.

The hearing officer relies on the guidelines contained in the Health Care Financing Administration ("HCFA") Program Validation Report ("the Report"). However, the Report highlights the inadequacy of the reporting requirements. It reviewed

997.97 overpayment assessment for the period 1981–1984. However, she directed Blue Shield to recalculate its assessment for the 1984–1985 period upon her determination that adequate

documentation did exist for some of the claims pertaining to that period which had previously been rejected by Blue Shield.

the Medicare claims of ten psychiatric practitioners and concluded wide systematic abuse in the form of overpayments received by the practitioners. Among the concerns addressed in the Report are:

"2. Noncompliance and lack of documentation requirements. The States [sic] psychiatric medical record content requirements are very specific, while the Medicare documentation requirements are general.

. . . . .

4. [W]eaknesses in psychiatric program policy and implementation which may be contributing to abuses."

The report makes repeated reference to the lack of Medicare documentation requirements. Further, it attributes the insufficient record keeping by those surveyed to "unclear policy on what constitutes sufficient information for justifying payment." HCFA Report p. 8. In concluding that documentation guidelines for psychological services did not exist, the authors observed that:

"Without clear guidelines on what constitutes minimum psychiatric medical record content, providers will continue to be remiss in maintaining proper supporting information, making it impossible to validate medical necessity and type of services rendered. HCFA believes that psychiatric medical record documentation policy should be developed, and have suggested that one Carrier contact the State psychiatric specialty for [its] advise [sic] and consent."

HCFA Report p. 10 (footnotes omitted).

The government has in essence stated that as of March, 1983, the date of issuance of the Report, no documentation guidelines pertaining to psychiatric physicians seeking reimbursement from Blue Shield for services rendered to Medicare patients, existed. Plaintiff cannot therefore be held liable for failure to conform to standards that in effect were nonexistent.

"Judicial review [of administrative actions] must operate to ensure that the ad-ministrative process itself will confine and control the exercise of discretion. Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible." *Environmental Defense Fund, Incorporated v. Ruckelshaus,* 439 F.2d 584, 598 (D.C.Cir.1971).

Plaintiff's motion for summary judgment is therefore granted. Defendant's motion for summary judgment is denied.